IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

ROGER L. COOK,                         *

    Plaintiff,                       *

        v.                          *       CIVIL NO.: WDQ-14-3770

SCI MARYLAND FUNERAL SERVICES,         *
INC. D/B/A/ ARBUTUS MEMORIAL           *
PARK,                                  *

And                                    *

SCOTT FARRIS,                          *
SCI MARYLAND FUNERAL SERVICES,*
INC.,                                  *

    Defendants.                      *

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

Roger L. Cook, *pro se*, sued SCI Maryland Funeral Services,
Inc. d/b/a Arbutus Memorial Park ("Arbutus") and Scott Farris,
Marketing Director for Arbutus, for employment discrimination
and retaliation in violation of Title VII of the Civil Rights
Act of 1964 ("Title VII").[1]  The Defendants counterclaimed for
breach of contract and unjust enrichment.  Pending are the
Defendants' motion to dismiss for failure to state a claim and
Cook's motion to dismiss the counterclaims.  No hearing is
necessary.  Local Rule 105.6 (D. Md. 2014).  For the following

_____

[1] 42 U.S.C. §§ 2000e, *et seq.*

reasons, the Defendants' motion will be granted and Cook's motion will be denied.  The Court will grant Cook leave to amend his discrimination claim.

I.   Background[2]

  A. The Plaintiff's Employment and Termination

Arbutus is a "nationwide provider of funeral, cremation and cemetery services."  ECF No. 1 at ¶ 2.  In 2001, Arbutus hired Cook as a groundskeeper.  *Id.* at ¶ 7.  In September 2009, Arbutus promoted Cook to superintendent.  *Id.* at ¶ 8.

"Throughout the years since Cook started work at Arbutus[], the administration particularly Tony Georgejakis and Scott Farris have exhibited hostility and discriminatory treatment of him."  ECF No. 1 at ¶ 9.  According to Cook, "[a]ll of these antipathy started when Cook would not go against Company Policy.  The Company disciplined him by sending him home that day."  *Id.* at ¶ 12.  When Cook returned to work, he "met with Mike Goney, Farris' boss and Scott Young, Mike's boss and spoke to them about the issues that led to his discipline.  He was hailed by the two bosses for sticking to his gun[s]."  *Id.* at ¶ 13.  In response,

_____

[2] On a motion to dismiss, the well-pled allegations in the complaint are accepted as true.  *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).  The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed.  *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

"Farris called Cook and gave him a week off with pay." *Id*. at ¶ 13.

In his time with Arbutus, "Cook [] called the Human Resources Department on several occasions making reports about the irregularities that went on with Arbutus's customers' graves."[3]  ECF No. 1 at ¶ 15.  "These irregularities were against company policy and were carried out by Tony Georgejakis and Farris."[4]  *Id*.

"All of these were irregularities that Cook communicated to his superiors . . . [were] used [] to punish him and eventually terminate[] him."  ECF No. 1 at ¶ 24.  Cook alleges that "Farris concocted a scheme to retaliate against Cook's opposition to these flagrant irregularities and abuse pertaining to Arbutus Customers' graves."  *Id*. at ¶ 25.  On Mother's Day, May 11, 2014, Farris purposefully understaffed the memorial park; "Cook was the only employee and superintendent charged with

---

[3] "Cook has documented over the years the irregularities that went on a daily basis at the park starting with grave encroachments, families getting overcharged and not getting the burial that they requested for their loved ones in their contracts."  ECF No. 1 at ¶ 23.

[4] In the complaint, Cook detailed one occasion during which Georgejakis made an error with a family's grave site, causing a lawyer to contact Arbutus.  ECF No. 1 at ¶¶ 16-18.  Farris was upset with Cook for answering the lawyer's questions.  *Id*. at ¶ 19.  "Tony Georgejakis was demoted for these incidents" but was not terminated.  *Id*. at ¶ 22.

fixing and decorating the whole cemetery," even though Mother's Day is one of the busiest days of the year. *Id.* at ¶¶ 25-26. "Cook called [] the main office for help[,] as it was impossible for him to get the grounds ready by himself." *Id.* at ¶ 26. "The administration sent two Hispanics who did not speak any English. Cook who did not speak any Spanish found it hard to communicate or instruct the two helpers on what to do." *Id.* As a result, the memorial park was in "disarray" when customers arrived. *Id.*

On May 28, 2014, Farris terminated Cook. ECF No. 1 at ¶ 28. Farris cited Cook's poor performance, culminating in the Mother's Day incident.[5] *Id.* "Cook confronted Farris telling him that he was firing [Cook] for what Cook knew about the burial irregularities and what [Cook] could prove not for any performance issues." *Id.* "Farris then offered Cook a severance." *Id.*

B. Negotiations and the Consulting Agreement

Farris and Cook met to discuss the terms of the severance package. ECF No. 1 at ¶ 29. "Farris informed Cook that the terms of the severance were that Cook could not sue or say anything bad about [Arbutus] and that Cook would never be affiliated with [Arbutus] in the future." *Id.* at ¶ 30. Cook

---

[5] Cook alleges that he received positive performance reviews before 2014. *See* ECF No. 1 at ¶ 11.

accused Farris of trying to give him "hush money" and refused to sign the agreement. *Id.* at ¶ 31. Farris asked Cook the amount of money he needed to sign the agreement. *Id.* at ¶ 32. "Cook replied that he would call Farris the next day." *Id.*

The next day, "Cook asked Farris whether he was trying to pretend that he did not know of any of the burial irregularities . . . ." ECF No. 1 at ¶ 33. "Farris responded by asking Cook to give [] a number." *Id.* Cook "jokingly" requested $250,000. *Id.* at ¶ 34. "Farris stated that he would get back to Cook." *Id.* On May 30, 2014, Farris rejected the $250,000 severance request and accused Cook of extortion. *Id.* at ¶ 34.

On June 4, 2014, "Farris telephoned Cook and told him that the severance would go up to six months instead of the initial thirteen weeks." ECF No. 1 at ¶ 37. Further, "Cook would receive a check for the whole year to be an independent contractor with [Arbutus]." *Id.* Farris provided Cook with the contract titled "Independent Contractor/Consultative Agreement."[6] *See id.* at ¶ 38.

On June 5, 2014, "Farris telephoned Cook and asked him what he had decided." ECF No. 1 at ¶ 38. "Cook stated that he

---

[6] Although Cook discusses and quotes the agreement in the complaint, it was not attached as an exhibit. The Defendants attached the contract to their motion to dismiss. *See* ECF No. 7-3. Because Cook incorporated the Agreement by reference, the Court may consider it on a motion to dismiss. *See Hewett v. LeBlang*, No. 12 Civ. 1713 PKC, 2012 WL 2820274, at *6 (S.D.N.Y. July 5, 2012).

needed an attorney to review the contract before he signed it."
*Id.* "Farris pressed [] Cook to sign the contract and [stated]
that the sooner Cook signed the contract the faster it will go
into effect." *Id.* "Farris then told Cook that there was no
need getting lawyers involved as they are the ones that get all
the money." *Id.* "Farris [also] said he would be going on
vacation soon and that if it was not signed on that day, the
deal will be off the table." *Id.* at ¶ 39. "Cook pressured with
the mounting bills, family obligations to his wife and two
children who he supports[,] reluctantly signed the agreement
without the opportunity for a lawyer's review." *Id.* at ¶ 41.

The Agreement is four pages long. ECF No. 7-3. Under
"Section 3: Consideration," Arbutus agreed to pay Cook
$37,897.60. *Id.* at 2. Section 5A of the Agreement states,

> For and in consideration of the payment
> described in Section 3, Consultant does hereby
> covenant not to sue and fully and forever waives,
> releases, and discharges . . . the Company . . . from
> all liabilities, claims, damages or causes of action
> of all kinds and descriptions that Consultant might
> have against the Company, including but not limited
> to, those arising out of Consultant's previous
> employment with the Company and/or Consultant's
> termination therefrom, including, but not limited to
> any claim that the Company discriminated against
> Consultant on the basis of race, sex, religion,
> disability, national origin, handicap, or ancestry,
> that the Company violated any promise or agreement
> ether express or implied with Consultant, or that the
> Company terminated Consultant for any illegal reason
> or in an illegal fashion.

6

> Consultant acknowledges and agrees that
> Consultant has waived rights and claims pursuant to
> this Agreement and related to previous employment with
> Company in exchange for consideration received from
> the Company, the value of which exceeds payment or
> remuneration to which Consultant may have been
> entitled.

ECF No. 7-3 at 3.

C. Procedural History

On June 19, 2014, Cook filed a complaint with the Equal Employment and Opportunity Commission ("EEOC").  ECF No. 1 at ¶ 43.  On September 3, 2014, Cook received a right to sue letter. *Id.* at ¶ 44.

On December 3, 2014, Cook sued Arbutus and Farris for employment discrimination and retaliation.[7]  ECF No. 1.  On February 4, 2015, the Defendants moved to dismiss the complaint. ECF No. 7.  The Defendants also filed a counterclaim, alleging breach of contract and unjust enrichment.  ECF No. 9.  On February 19, 2014, Cook moved to dismiss the counterclaims[8] and opposed the motion to dismiss.[9]  Cook also filed a "supplemental" to his complaint, alleging additional facts.  ECF No. 16.  On March 9, 2015, the Defendants opposed the motion to dismiss the

----

[7] Cook was originally represented by counsel.  However, on January 21, 2015, Cook's counsel moved to withdraw from the representation.  ECF No. 3.  On February 2, 2015, the Court granted the motion, and Cook proceeded *pro se*.  ECF No. 6.

[8] ECF No. 14.

[9] ECF No. 15.

counterclaims and replied to the motion to dismiss the complaint.  ECF Nos. 17, 19.

## II.  Analysis

### A. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), an action can be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003).  These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id*. at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id*. (internal quotation marks and alteration omitted).

B. The Defendants' Motion to Dismiss the Complaint

The Defendants argue that the Agreement bars Cook's suit, and, even if Cook did not waive his right to sue, the complaint fails to state claims for discrimination and retaliation. *See* ECF No. 7-2 at 1.

1. The Agreement

An employee may waive his Title VII claims against his employer provided that the waiver is knowing and voluntary. *See, e.g.*, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 & n. 15, (1974); *Randolph v. Caruso Homes, Inc.*, No. RWT-13-2069, 2014 WL 4661985, at *4-5 (D. Md. Sept. 16, 2014). Whether the release is knowing and voluntary is "determined by reviewing the totality of the circumstances surrounding its execution." *Randolph*, 2014 WL 4661985, at *4. The Court should consider, "(1) the employee's education and business experience; (2) the respective roles of the employer and employee in determining the

9

terms and conditions of the waiver; (3) the clarity of the
agreement; (4) the time the employee had to study the agreement;
(5) whether the employee had the advice of counsel; (6) whether
the employer encouraged the employee to seek the advice of
counsel and whether the employee had sufficient time to do so;
and (7) the waiver's consideration." *Cassiday v. Greenhorne &
O'Mara, Inc.*, 220 F.Supp.2d 488, 493 (D.Md. 2002), *aff'd* 63 Fed.
App'x 169 (4th Cir. 2003). This list is non-exclusive, and no
factor is determinative. *Id.* A court must also examine if the
release was signed under duress. *Randolph*, 2014 WL 4661985, at
*4.

The defendant carries the burden of showing that a release
is valid. *See Alexander v. UIP Prop. Mgmt.*, No. DKC 14-2469,
2015 WL 1472004, at *2-3 (D. Md. Mar. 30, 2015). "An
affirmative defense, such as release, is not ordinarily
considered on a motion to dismiss because the plaintiff is not
required to negate it in the complaint." *Id.* "While
affirmative defenses may be reached by a motion to dismiss filed
under Rule 12(b)(6), such a motion should be granted only in the
rare circumstances where facts sufficient to rule on an
affirmative defense clearly appear on the face of the
complaint." *Id.* "Moreover, a movant cannot merely show that
the elements of the defense appear on the face of the complaint
or in properly considered documents, but must also 'show that

the plaintiff's potential rejoinder to the affirmative defense
was foreclosed by the allegations in the complaint.'"   *Id.*
(quoting *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 466 (4th Cir.
2007) (*en banc*)).[10]

In *Alexander v. UIP Prop. Mgmt.*, the Court denied the
defendant's motion to dismiss because "the totalities of
circumstances [were] not [] clearly established on the current
record." 2015 WL 1472004, at *3.   The complaint in *Alexander*
alleged

> that the Agreement was presented to Plaintiff under a
> "take it or leave it" scenario, that Plaintiff was
> locked in a room with her supervisor who distracted
> her from fully reading and understanding the
> Agreement, and contrary to Paragraph 12 of the
> Agreement, Plaintiff purportedly was not advised about
> her right to consult an attorney before signing the
> release.

*Id.*

Here, although Cook does not plead such extreme facts as
were present in *Alexander*, he does allege that "Farris pressed
[] Cook to sign the contract and [stated] that the sooner Cook
signed the contract the faster it will go into effect."  ECF No.
1 at ¶ 38.  "Farris then told Cook that there was no need
getting lawyers involved as they are the ones that get all the
money."  *Id.*  Moreover, "Farris [also] said he would be going on
vacation soon and that if it was not signed on that day, the

---

[10] All the cases cited by the Defendants in which a release was
found valid were decided on summary judgment, not a motion to
dismiss.

deal will be off the table." *Id.* at ¶ 39.  Based on these
allegations, "the totalities of circumstances are not so clearly
established" to permit resolution of this issue on a motion to
dismiss.  *Alexander*, 2015 WL 1472004, at *3.

   2. The Allegations in the Complaint

   At trial, a plaintiff can prove his employer's
discrimination through one of two methods.  *See Hill v. Lockheed
Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004).
First, he may use "any direct or indirect evidence relevant to
and sufficiently probative of the issue," under "ordinary
principles of proof."  *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728,
731 (4th Cir. 1996) (internal quotation marks omitted).  Absent
direct evidence of discrimination, the Court applies the burden-
shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S.
792 (1973).  Under that framework, the plaintiff must first
establish a prima facie case of discrimination.  *Merritt v. Old
Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010).

   To establish a *prima facie* case of employment discrim-
ination, Cook must show 1) he is a member of a protected class,
2) he suffered an adverse employment action, 3) at the time of
the action, he was meeting his employer's legitimate
expectations, and 4) he was treated differently from other
similarly situated persons who were not members of the protected
class.  *Hill*, 354 F.3d at 285; *Pulley v. KPMG Consulting, Inc.*,

12

348 F. Supp. 2d 388, 394 (D. Md. 2004).  To establish a *prima facie* case of retaliation, Cook must show 1) that he engaged in a protected activity; 2) his employer took an adverse employment action against him; and 3) there was a causal link between the protected activity and adverse action.  *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th 2005).

To survive a motion to dismiss, a plaintiff is not required to plead every element of a *prima facie* case of discrimination or retaliation.  *McCleary-Evans v. Md. Dept. of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015).  A plaintiff must, however, plead sufficient facts to establish a *plausible* claim of discrimination.  *See id.* at 585-86.

a. Employment Discrimination

Cook's complaint is devoid of facts supporting his discrimination claim.  Cook never alleges that he is a member of a protected class or that employees not of the protected class were treated differently.  In fact, Cook alleges that the Defendants terminated him because of his complaints about company policy not because of Cook's membership in a protected class.  *See* ECF No. 1 at ¶¶ 12, 15, 24.

On February 19, 2015, Cook submitted a "supplemental" to his complaint.  ECF No. 16.  The supplemental alleged new facts, including that Cook is African American, and provided examples of how white employees were treated differently.  *Id.* at 1.

13

Because Cook never sought to amend his complaint, the Court cannot consider these facts on this motion to dismiss.  However, given Cook's *pro se* status and the lenient standard of Federal Rule of Civil Procedure 15,[11] the Court will dismiss Cook's discrimination claim without prejudice and grant him the opportunity to amend his complaint.[12]

      b. Retaliation

Section 704(a) of Title VII provides that employers may not discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter" or "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  "The plain language of § 704(a) limits protected activities to a distinct few activities: opposing an unlawful employment practice; making a charge; testifying; assisting; or

---

[11] Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend should be freely given when justice requires.  Leave should be denied only when amendment would unduly prejudice the opposing party, amount to futility, or reward the movant's bad faith.  *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008); *Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010).

[12] In his amended complaint, Cook may only assert claims against Farris is his official capacity.  *See Lissau v. S. Food. Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998) ("[S]upervisors are not liable in their individual capacities for Title VII violations.").

participating in a Title VII investigation." *Gibson v. Marjack Co., Inc.*, 718 F. Supp. 2d 649, 654 (D. Md. 2010).

Cook alleges that he was terminated because he "voiced his opposition to the ongoing burial irregularities . . . ."[13] *See* ECF No. 1 at ¶ 51.  Title VII protects against employment discrimination, not "burial irregularities."  Cooks actions were not protected activities under Title VII, and, accordingly, the Court must dismiss his retaliation claim. *See Gibson*, 718 F. Supp. 2d at 654 ("Referring a person for employment is not protected under § 704(a).").

C. The Plaintiff's Motion to Dismiss the Counterclaims

In his motion to dismiss the counterclaim, Cook asserts that the "breach of contract [claim] should be dismissed due to [certain] facts . . . ." *See* ECF No. 14 at 1.  Cook then provides a list of facts with no legal argument. *See id.*

To the extent that Cook is attempting to use his list of facts to show that the contract is unenforceable because of duress, the Court will deny his motion to dismiss for the same reason that it denied the Defendants' motion to dismiss under

---

[13] In his supplemental, Cook alleges that these "irregularities" were only happening to African American families.  ECF No. 16 at 1.  This fact, however, would not alter the Court's analysis. Therefore, Cook will not be granted leave to amend his retaliation claim.

the Agreement.   Under Maryland law,[14] duress is "a wrongful act
which deprives an individual of the exercise of his free will."
*Eckstein v. Eckstein*, 379 A.2d 757, 761 (Md. Ct. Spec.App.
1978).  The wrongful act may take the form of an "improper
threat which leaves the victim with no reasonable alternative
other than to execute the agreement."  *Employers Ins. of Wasau
v. Bond,* No. HAR-90-1139, 1991 WL 8431, at *2 (D. Md. 1991).

Duress is an affirmative defense to a breach of contract
claim.  *See id.*  As stated previously, "[w]hile affirmative
defenses may be reached by a motion to dismiss filed under Rule
12(b)(6), such a motion should be granted only in the rare
circumstances where facts sufficient to rule on an affirmative
defense clearly appear on the face of the complaint."
*Alexander*, 2015 WL 1472004, at *3.  Here, there are not
sufficient facts in the pleadings to determine if Cook signed
the Agreement under duress.  *See id.*  Accordingly, the Court
will deny the motion to dismiss the counterclaims.

---

[14] The Agreement states that it "will be interpreted and
construed in accordance with the laws of the State of Maryland."
ECF No. 7-3 at 5.

III. Conclusion

For the reasons stated above, the Court will grant the Defendants' motion to dismiss the complaint.  Cook's motion to dismiss the counterclaims will be denied.

_7/28/15_
Date

William D. Quarles, Jr.
United States District Judge