IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROGER L. COOK | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. 14-3770-GLR |
| SCI MARYLAND FUNERAL SERVICES INC., ET AL., | * | |
| | * | |
| Defendants. | ****** | |

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses the Motion for Default Judgment filed by Defendant SCI Maryland Funeral Services, Inc. ("SCI"), against Plaintiff, Roger L. Cook. (ECF No. 26.) Mr. Cook, who proceeds *pro se*, filed a response on December 18, 2015. (ECF No. 28.) SCI filed a reply on January 4, 2015. (ECF No. 31.) On January 5, 2016, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, Judge Quarles referred this case to me for a report and recommendation on SCI's motion. (ECF No. 32). I find that a hearing is unnecessary. *See* Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons set forth below, I respectfully recommend that SCI's Motion for Default Judgment be GRANTED IN PART and DENIED IN PART.

**I.   FACTUAL AND PROCEDURAL HISTORY**

On December 3, 2014, Mr. Cook commenced this action against Defendants alleging employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. (ECF No. 1.) SCI then counterclaimed against Mr. Cook, alleging breach of contract and unjust enrichment. (ECF No. 9.) Specifically, SCI alleged that, at the close of his employment with SCI, Mr. Cook signed an "Independent

Contractor/Consultative Agreement" ("the Agreement"), under which he "promised not to sue SCI and released it from all employment related claims." (Countercl. ¶ 2.) SCI thus claimed that the Title VII claims brought by Mr. Cook constituted a breach of the Agreement, and it sought damages including the amount it paid to Mr. Cook under the Agreement. (*Id.* ¶¶ 31-33.) Additionally, SCI claimed that if the Agreement were deemed invalid for any reason, Mr. Cook's retention of any payments made thereunder would constitute unjust enrichment. (*Id.* ¶¶ 34-36.) As of the date of the Counterclaim, SCI contended it had paid Mr. Cook $22,106.91. (*Id.* ¶ 23.)

Thereafter, each party moved to dismiss the claims against it, and in a Memorandum Opinion dated July 28, 2015, the Court granted SCI's motion to dismiss Mr. Cook's Title VII claims and denied Mr. Cook's motion to dismiss SCI's breach of contract and unjust enrichment claims. (ECF No. 20.) With respect to Mr. Cook's Title VII claims, the Court found that his allegations pertaining to his membership in a protected class and the differential treatment of those outside his class were insufficient to survive a motion to dismiss. The Court noted that although Mr. Cook had included those allegations in a supplemental filing, it was not permitted to consider that filing because he had not filed a motion to amend his complaint. Accordingly, the Court dismissed Mr. Cook's discrimination claim *without* prejudice and granted him the opportunity to amend his complaint within 30 days. (ECF No. 21.) The Court also found that Mr. Cook's retaliation claim did not contain sufficient allegations concerning his protected activities to survive a motion to dismiss, and it dismissed that claim with prejudice. Finally, with respect to SCI's counterclaim, the Court found that the pleadings did not contain sufficient facts to allow it to consider Mr. Cook's affirmative defenses concerning the validity of the Agreement, and that it was therefore inappropriate to dismiss SCI's counterclaims at that juncture. The

docketing entries for the Court's July 28, 2015 Memorandum Opinion and Order reflect that on that same date, the Deputy Clerk mailed a copy of each to Mr. Cook.[1]

Mr. Cook failed to file an amended complaint correcting the insufficiencies in his initial pleading. Thus, on November 5, 2015, the Court dismissed his claims *with* prejudice and directed him to submit an answer to SCI's counterclaim within 14 days. (ECF No. 22.) The docketing entry for the Court's November 5, 2015 Order reflects that on that same date, the Deputy Clerk mailed a copy of the order to Mr. Cook. However, Mr. Cook failed to file an answer, and upon SCI's Motion for Entry of Default against Mr. Cook, the Clerk entered an order of Default against Mr. Cook on January 4, 2015. (ECF No. 30.) SCI filed its Motion for Default Judgment on December 18, 2015, seeking to recover from Mr. Cook the $22,106.91 it paid Mr. Cook under the Agreement. (ECF No. 26.)

Concerned by a lack of documentary evidence supporting SCI's claimed damages, I requested further clarification as to the actual sum paid to Mr. Cook. (ECF No. 33.) Upon review of SCI's supplementation I am satisfied that $22,106.91 accurately reflects the sum paid to Mr. Cook under the Agreement. (*See* ECF No. 34-1.)

## II.   LEGAL ANALYSIS

### A.   Subject Matter Jurisdiction

In preparing a report and recommendation on SCI's motion, in addition to considering whether default judgment is appropriate, I "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); Fed. R. Civ. P. 12(h)(3) ("If the court determines at

---

[1] The Court received correspondence from Mr. Cook dated December 14, 2015, indicating that he had not received any correspondence from the Court or SCI since March 2015.

any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). In its counterclaim, SCI asserts that this Court "has original jurisdiction of these claims as compulsory counterclaims pursuant to 28 U.S.C. Sections 1332, 1441, and 1367(a), and Rule 13(a) of the Federal Rules of Civil Procedure, or in the alternative, as permissive counterclaims under Federal Rule of Civil Procedure 13(b)." (Countercl. ¶ 9.) First, this court does not have an independent source of jurisdiction over SCI's counterclaims, as federal question jurisdiction is precluded by the fact that SCI's counterclaims all sound in state law and diversity jurisdiction by the fact that the amount in controversy falls below the $75,000.00 threshold.[2] *See* 28 U.S.C. §§ 1331, 1332. Subject matter jurisdiction over SCI's counterclaims thus rests on the Court's authority to exercise supplemental jurisdiction under 28 U.S.C. § 1367, based on the counterclaims' relation to the (now dismissed) claims brought by Mr. Cook under federal law. *Long v. Welch & Rushe, Inc.*, 28 F. Supp. 3d 446, 451 ("Because the court has neither federal question nor diversity jurisdiction over the counterclaims, 28 U.S.C. § 1367(a) provides the only possible basis for jurisdiction.").

  1. **Counterclaim Type**

Federal Rule of Civil Procedure 13 defines two types of counterclaims: compulsory and permissive. A compulsory counterclaim is, by definition, within the supplemental jurisdiction of the court. *Long*, 28 F. Supp. 3d at 452 (citing *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988)). By contrast, as this court has recently noted, it remains the law within the Fourth Circuit that "federal courts may not exercise supplemental jurisdiction over permissive counterclaims." *Moore v. Koch*, Civ. No. 15-620-WMN, 2015 WL 4485465, at *3 (D. Md. Jul. 21, 2015)

---

[2] However, as noted below, SCI's requested damages are not compensatory in nature. It is unclear whether a subsequent request for compensatory damages might exceed the $75,000.00 threshold.

(quoting *Ramirez v. Amazing Home Contractors, Inc.*, Civ. No. 14-2168-JKB, 2014 WL 6845555, at *5 (D. Md. Nov. 25, 2014) (collecting cases)). Accordingly, to determine whether this Court may properly exercise jurisdiction over SCI's counterclaims, I must first evaluate whether they are compulsory or permissive. Under Rule 13, a compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13 (a). The Fourth Circuit considers four inquiries when assessing whether a counterclaim is compulsory:

> (1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? And (4) Is there any logical relationship between the claim and counterclaim? A court need not answer all these questions in the affirmative for the counterclaim to be compulsory. Rather, the tests are less a litmus, more a guideline.

*Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir.1988) (citations omitted). The "underlying thread" of each of the four inquiries is "evidentiary similarity." Although the first inquiry weighs toward finding SCI's counterclaims permissive, and the second is inconclusive, due to the strong weight of the third and fourth inquiries in this case, I recommend that the Court find SCI's counterclaims compulsory.

First, Mr. Cook's Title VII claims and SCI's breach of contract and unjust enrichment counterclaims are based on distinct issues of law and unrelated facts.[3] The Agreement itself, as

---

[3] To establish a prima facie case of discrimination under Title VII, for example, Mr. Cook was required to demonstrate that: "(1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) he was treated differently than similarly situated employees outside his protected class." *Frank v. England*, 313 F. Supp. 2d 532, 538 (D. Md. 2004) (citation omitted). In factual support of his claims, Mr. Cook asserted that SCI discriminated against him because he complained about burial irregularities and terminated him due to his complaints. By contrast, to state a breach of contract claim under Maryland law, SCI was required to allege (1) the existence of a contractual obligation owed by Mr. Cook to SCI, and (2) a material breach of that obligation by Mr. Cook. *Taylor v. NationsBank N.A.*, 776 A.2d 645, 651 (Md. 2001). And in factual support of its counterclaims, SCI cited the Agreement Mr. Cook signed upon

well as the facts surrounding its formation, has no bearing on whether Mr. Cook experienced discriminatory treatment based on his race during the course of his employment with SCI or on whether he was retaliated against for engaging in protected activity when his employment was terminated. Likewise, whether SCI discriminated and retaliated against Mr. Cook in violation of Title VII is irrelevant to whether he breached the Agreement with SCI by filing his Title VII claims against it, whether the Agreement itself was valid, or whether Mr. Cook was unjustly enriched by retaining the payments he received under the Agreement.

Second, under Maryland law, a subsequent claim may be barred by claim preclusion, or *res judicata*, if three elements are met: "(1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been determined in prior litigation; and (3) there was a final judgment on the merits in the prior litigation." *R & D 2001, LLC v. Rice*, 938 A.2d 839, 848 (Md. 2008). Although the first and third prongs would almost certainly be satisfied here, it is less clear whether the second prong would be met, due to the overlapping issues implicated not by the parties' claims, but by their affirmative defenses.[4] The lack of a clear outcome under the second inquiry is not problematic, as the *res judicata* component of the inquiry should not control, since Rule 13(a) would be "superfluous" if its limits simply coincided

---

the conclusion of his employment with SCI, under which SCI promised to provide Mr. Cook with financial compensation, and under which Mr. Cook promised not to sue SCI for racial discrimination.

[4] For example, if this Court's resolution of Mr. Cook's claims had involved a determination that the Agreement was not a valid waiver of Mr. Cook's right to sue under Title VII, then under the doctrine of collateral estoppel, that determination might have prevented SCI from asserting a subsequent breach of contract action based on the Agreement. *See Williams v. Long*, 558 F. Supp. 2d 601, 605 (D. Md. 2008) ("The Fourth Circuit has in at least two cases also considered collateral estoppel, or issue preclusion, as part of this second inquiry."). However, that determination would not necessarily have prevented SCI from asserting its unjust enrichment claim in a subsequent action. By contrast, if this Court's resolution of Mr. Cook's claims had involved a determination that the Agreement was a valid waiver of Mr. Cook's right to sue under Title VII, neither res judicata nor collateral estoppel would have prevented SCI from asserting its breach of contract and unjust enrichment claims in a subsequent action.

with those of *res judicata*. *Long v. Welch & Rushe, Inc.*, 28 F. Supp. 3d 446 (D. Md. 2014) (citing *Painter*, 863 F.2d at 333).

Third, I must consider whether the same evidence is necessary to support or refute the claim and counterclaims. As the Fourth Circuit emphasized in *Painter*, "[w]here . . . the same evidence will support or refute both the claim and the counterclaim, the counterclaim will almost always be compulsory." 863 F.2d at 332. Despite the generally distinct nature of the facts and law necessary to support each party's claim, there is a great deal of overlap between evidence relevant to both parties' affirmative defenses, which turn on the validity of the Agreement. Specifically, the validity of the Agreement was potentially dispositive of Mr. Cook's Title VII claims, since SCI asserted that Mr. Cook had waived his right to pursue relief under Title VII under the Agreement. Similarly, the validity of the Agreement was potentially dispositive of SCI's breach of contract claim against Mr. Cook, since Mr. Cook asserted that he signed the Agreement under duress. Therefore, while there was little to no commonality between the evidence necessary to *support* each party's claim, there was a great deal of commonality between the evidence necessary to *refute* both parties' claims. Additionally, I note that the Fourth Circuit's discussion in *Painter* plainly rejects the notion that a counterclaim should be ruled permissive simply because the connection between the claim and the counterclaim arises from the parties' affirmative defenses, rather than the claims themselves. *See* 863 F.2d at 333. The third inquiry thus weighs strongly in favor of finding SCI's counterclaims compulsory.

Fourth, the logical relationship between the claim and the counterclaims further supports the determination that the counterclaims in this case are compulsory. As the Fourth Circuit explained in *Painter*, "counterclaims that are logically related to the claim but require different evidence to prove, may also be compulsory where considerations of economy and fairness

7

require, as they do here, that the controversy be settled in a single lawsuit." 863 F.2d at 334. At the time SCI filed its counterclaims, it could not have known that Mr. Cook's claims would be resolved without the Court reaching the issue of the validity of the Agreement. At that juncture, it would have been imprudent for SCI not to raise the Agreement as an affirmative defense, and its counterclaims plainly follow from that defense. Accordingly, given the posture of the case at the juncture at which SCI's counterclaims were asserted, judicial economy counsels in favor of finding them compulsory.

### 2. Discretionary Jurisdiction

Due to the procedural posture of this case, the determination that SCI's counterclaims are compulsory does not end the jurisdictional inquiry. Instead, § 1367 provides that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished. Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (citations omitted). Here, convenience, comity, and judicial economy all weigh strongly in favor of the Court continuing to retain jurisdiction over SCI's counterclaims. Although the Court might have dismissed SCI's counterclaims under subsection (c)(3) when it dismissed Mr. Cook's claims against SCI, it did not do so. To do so now would waste both the parties' and the Court's time and resources by requiring SCI to re-file its claims in state court, to wait to see if Mr. Cook again fails to answer those claims, and then to re-file its motion for default judgment against him. Instead, I

recommend that the Court continue to retain subject matter jurisdiction over SCI's counterclaims and that the Court rule on the pending Motion for Default Judgment.

### B.     Standard for Entry of Default Judgment

In determining whether to award a default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *Entrepreneur Media, Inc. v. JMD Entm't Grp., LLC*, 958 F. Supp. 2d 588, 593 (D. Md. 2013). Nonetheless, the Court must consider whether the unchallenged facts constitute a legitimate cause of action since a party in default does not admit mere conclusions of law. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012) (citing *Ryan*, 253 F.3d at 790). Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). If the Court determines that liability is established the Court must then determine the appropriate amount of damages. *CGI Fin., Inc., v. Johnson*, No. ELH-12-1985, 2013 WL 1192353, at *1 (D. Md. March 21, 2013). The Court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *Entrepreneur Media, Inc.*, 958 F. Supp. 2d at 593.

Rule 55 of the Federal Rules of Civil Procedure establishes the Court's legal framework for resolving this matter. "If, after entry of default, the plaintiff's complaint does not specify a 'sum certain' amount of damages, the court may enter a default judgment against the defendant pursuant to Fed. R. Civ. P. 55(b)(2)." *Id*. A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint

9

must be supported by affidavit or documentary evidence. *Redden*, 2010 WL 2651607, at *2. Rule 55(b)(2) provides that "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." The Court is not required to conduct an evidentiary hearing to determine damages; however it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010).

    **C.**    **Liability**

As noted above, SCI brought counterclaims alleging breach of contract and unjust enrichment under Maryland law. To establish a breach of contract claim under Maryland law, SCI was required to demonstrate (1) the existence of a contractual obligation owed by Mr. Cook to SCI, and (2) a material breach of that obligation by Mr. Cook. *Taylor v. NationsBank N.A.*, 776 A.2d 645, 651 (Md. 2001). In this case, SCI alleges that the contractual obligation owed by Mr. Cook under the Agreement was his promise not to sue SCI for any employment related claims. The material breach of that obligation occurred when Mr. Cook filed his employment-based claims under Title VII. Accordingly, I recommend that the Court find that SCI has stated a claim for relief for breach of contract.

However, SCI has not stated a claim for relief for unjust enrichment. Critically, unjust enrichment is a quasi-contractual remedy, available only where a valid contract does not govern the parties' interaction, which provides restitution damages. *FLF, Inc. v. World Publications, Inc.*, 999 F.Supp. 640, 642 (D. Md. 1998); *see also, Cty Comm'rs v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600 (Md. 2000) ("We hold that, generally, quasi-contract claims such as quantum meruit and unjust enrichment cannot be asserted when an express contract defining the rights and remedies of the parties exists."). Because SCI's unjust enrichment claim is premised on the

same transaction memorialized by the Agreement, that claim is not proper. I therefore recommend that SCI's Motion for Default Judgment be GRANTED as to its first cause of action (breach of contract) and DENIED as to its second (unjust enrichment). *See e.g., PNC Bank v. Chatani*, No. WDQ-13-1202, 2013 WL 4541486, at *2 (D. Md. Aug. 23, 2013); *Ulyssix Tech., Inc. v. Orbital Network Eng'g, Inc.*, No. ELH-10-2091, 2013 WL 4086200, at *6 (D. Md. Aug. 9, 2013); *E. Reg'l Med. Ctr. v. Newcomb*, No. WDQ-14-0136, 2014 WL 4798947, at *3 (D. Md. Sep. 25, 2014).

### D.   Damages

Having determined that SCI has established liability for its breach of contract claim, it is now appropriate to determine the damages to which SCI is entitled. *See Entrepreneur Media, Inc. v. JMD Entm't Grp., LLC*, 958 F. Supp. 2d 588, 593 (D. Md. 2013) ("If the court finds that liability is established, it must then turn to the determination of damages."). As noted above, the damages determination must be independent and not based on the factual allegations of damages. In SCI's motion, it seeks a return of the sum it paid Mr. Cook under the Agreement, citing in support of its request the "out of pocket rule" discussed by the Maryland Court of Special Appeals in *Weisman v. Connors*, 519 A.2d 795, 803 (Md. App. 1987). The damages discussion in *Wiseman* is inapposite to this case, however, since *Weisman* confronted the appropriate damages available for the tort of negligent misrepresentation, not breach of contract.[5]

Instead, for breach of contract claims, Maryland courts generally award damages "which will place the injured party in the monetary position he would have occupied if the contract had been properly performed." *Hall v. Lovell Regency Homes Ltd. Partnership*, 708 A.2d 344 (Md.

---

[5] Moreover, the Court of Special Appeals' judgment in *Weisman* was thereafter reversed by the Maryland Court of Appeals. *See Weisman v. Connors*, 540 A.2d 783 (Md. 1988).

App. 1998). Maryland courts follow the rule of *Hadley v. Baxendale*, 156 Eng.Rep. 145 (1854), and hold that upon a breach, the non-breaching party is entitled to compensatory damages which are the natural and proximate consequence of the breach, or which are reasonably within the parties' contemplation at the time of contracting. *Munday v. Waste Mgmt. of N. Am., Inc.*, 997 F. Supp. 681 (D. Md. 1998). SCI's payments to Mr. Cook pursuant to the Agreement were not a natural and proximate consequence of Mr. Cook's breach, and SCI does not claim that a return of the payments made under the Agreement was contemplated by the parties in the event of a breach. And while SCI may well have suffered monetary damages as a result of Mr. Cook's breach of the Agreement, the payments SCI made pursuant to the agreement and prior to the breach are not among them. Notably, the damages SCI seeks would effectively rescind the contract and place the parties in the position they would have occupied had the contract never been formed, rather than compensate SCI for the breach and place the parties in the position they would have occupied had the contract been properly performed. However, SCI did not bring a counterclaim for rescission, nor does its counterclaim otherwise contain allegations adequate to support a claim for rescission, and I must thus recommend that the Court decline to award SCI the damages it seeks in its motion.

Finally, I note that pursuant to Rule 54, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Here, SCI's breach of contract count in its counterclaim requested "judgment in an amount to be determined at trial, in excess of the monies paid to Cook pursuant to the Agreement, plus interest, costs, and attorney's fees, and grant SCI such other relief as the Court deems appropriate." Countercl. ¶ 33. Because the attorney's fees SCI incurred defending against Mr. Cook's Title VII claims were a natural and proximate cause of his breach, and because SCI's

12


breach of contract counterclaim included a demand for attorney's fees, Mr. Cook may properly be required to compensate SCI for those fees. *See e.g., Cefali v. Buffalo Brass Co., Inc.*, 748 F. Supp. 1011, 1026 (W.D.N.Y. 1990) (explaining that when a former employee breached covenant not to sue his former employer for employment related claims, "[attorney's] fees [could] be seen as a direct measure of the damages for the alleged breach of contract"). Accordingly, I recommend that the Court decline to award SCI damages without prejudice to SCI's ability to request reimbursement for the sum it reasonably spent defending against Mr. Cook's Title VII claims, in accordance with the procedure for seeking attorney's fees set forth in Local Rule 109.2.

### III. CONCLUSION

In sum, I recommend that:

1. The Court GRANT SCI'S Motion for Default Judgment against Mr. Cook (ECF No. 26) as to its First Cause of Action;

2. The Court DENY SCI's Motion for Default Judgment against Mr. Cook (ECF No. 26) as to its Second Cause of Action; and

2. The Court award SCI no damages.

I also direct the Clerk to mail a copy of this Report and Recommendation to Mr. Cook at the addresses listed on Plaintiff's Complaint. (ECF No. 1). Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5.b.

March 9, 2016
/s/
J. Mark Coulson
United States Magistrate Judge