IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROGER L. COOK                          *

      Plaintiff,                          *

v.                                     *                    Civil Case No. 14-3770-GLR

SCI MARYLAND FUNERAL SERVICES          *
INC., ET AL.,
                                       *
      Defendants.

                        ******

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses the Motion for Attorneys' Fees filed by Defendant, SCI Maryland Funeral Services, Inc. ("SCI"), against Plaintiff, Roger L. Cook. (ECF No. 37.) The motion is supported by a Memorandum of Points and Authorities, Declarations of Raymond C. Baldwin, Counsel for Defendant, and of Brooks R. Amiot, Esquire, who attested to the reasonableness of the fee award, and a Supplemental Memorandum.[1] (ECF No. 38, 40.) Mr. Cook, who proceeds *pro se*, did not respond to Defendant's Motion, and the time for doing so has passed. Loc. R. 105.2 (D. Md. 2014). I find that a hearing is unnecessary. *See* Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons set forth below, I respectfully recommend that the Court GRANT SCI's Motion for Attorneys' Fees.

## I.    FACTUAL AND PROCEDURAL HISTORY

On December 3, 2014, Mr. Cook commenced this action against Defendants alleging employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of

---

[1] After I issued my first report and recommendation in this case suggesting that attorney's fees might be an appropriate measure of the damages SCI suffered as a result of Mr. Cook's breach of contract, the Maryland Court of Special Appeals issued its decision in Kaye v. Wilson-Gaskins, 135 A.3d 892 (Md. Ct. Spec. App. 2016), which influences my assessment of whether this Court should award SCI's attorney's fees. Accordingly, I asked SCI to submit supplemental briefing in support of its motion on the effect of Kaye on the relief it requested in its motion. (ECF No. 39.)

1964, 42 U.S.C. §§ 2000e, *et seq.* (ECF No. 1.)  SCI then counterclaimed against Mr. Cook, alleging breach of contract and unjust enrichment.  (ECF No. 9.)  Specifically, SCI alleged that, at the close of his employment with SCI, Mr. Cook signed an "Independent Contractor/Consultative Agreement" ("the Agreement"), under which, *inter alia*, he "promised not to sue SCI and released it from all employment related claims." (Countercl. ¶ 2.)  SCI thus claimed that the Title VII claims brought by Mr. Cook constituted a breach of the Agreement, and it sought damages including the amount it paid to Mr. Cook under the Agreement.  (*Id.* ¶¶ 31-33.)

Thereafter, each party moved to dismiss the claims against it, and in a Memorandum Opinion dated July 28, 2015, the Court granted SCI's motion to dismiss Mr. Cook's Title VII claims and denied Mr. Cook's motion to dismiss SCI's breach of contract and unjust enrichment claims.  (ECF No. 20.)  With respect to Mr. Cook's Title VII claims, the Court found that his allegations pertaining to his membership in a protected class and the differential treatment of those outside his class were insufficient to survive a motion to dismiss.  The Court noted that although Mr. Cook had included those allegations in a supplemental filing, it was not permitted to consider that filing because he had not filed a motion to amend his complaint.  Accordingly, the Court dismissed Mr. Cook's discrimination claim *without* prejudice and granted him the opportunity to amend his complaint within 30 days.  (ECF No. 21.)  With respect to SCI's counterclaim, the Court found that the pleadings did not contain sufficient facts to allow it to consider Mr. Cook's affirmative defenses concerning the validity of the Agreement, and that it was therefore inappropriate to dismiss SCI's counterclaims at that juncture.

Mr. Cook failed to file an amended complaint correcting the insufficiencies in his initial pleading.  Thus, on November 5, 2015, the Court dismissed his claims *with* prejudice and

directed him to submit an answer to SCI's counterclaim within 14 days.  (ECF No. 22.)
However, Mr. Cook failed to file an answer, and upon SCI's Motion for Entry of Default against
Mr. Cook, the Clerk entered an order of Default against Mr. Cook on January 4, 2015.  (ECF No.
30.)  SCI filed its Motion for Default Judgment on December 18, 2015, seeking to recover from
Mr. Cook the $22,106.91 it paid Mr. Cook under the Agreement.  (ECF No. 26.)

On January 5, 2016, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302,
Judge Quarles referred this case to me for a report and recommendation on SCI's Motion for
Default Judgment.  (ECF No. 32).  On March 9, 2016, I issued a Report and Recommendation,
recommending that the Court grant SCI's motion for default judgment as to its breach of contract
claim but decline to award SCI's requested damages, the return of the payments it made under
the contract, because those damages were not compensatory in nature, as required under
Maryland law for breach of contract claims.  I further recommended that the Court issue its
ruling without prejudice to SCI's ability to instead seek attorney's fees as the appropriate
measure of damages for its breach of contract claim.  See e.g., Cefali v. Buffalo Brass Co., Inc.,
748 F. Supp. 1011, 1026 (W.D.N.Y. 1990) (explaining that when a former employee breached
covenant not to sue his former employer for employment related claims, "[attorney's] fees
[could] be seen as a direct measure of the damages for the alleged breach of contract").
Accordingly, SCI has filed the instant Motion for Attorneys' Fees.

## II.   ANALYSIS

The contract giving rise to the breach of contract claim for which the Court granted SCI's
motion for default judgment provided in pertinent part:

> For and in consideration of the payment described in Section 3, [Mr. Cook] does
> hereby covenant not to sue and fully and forever waives, releases, and discharges .
> . . [SCI] . . . from all liabilities, claims, damages or causes of action . . including,

but not limited to, those arising out of [Mr. Cook's] previous employment with
[SCI].

(ECF No. 7-3.)  In my first report and recommendation, which has since been adopted by the
Court (ECF No. 36), I determined that SCI had stated a claim for liability on its breach of
contract claim, since the contract established an obligation owed by Mr. Cook to SCI, and since
Mr. Cook breached that obligation by initiating a lawsuit against SCI that stemmed from his
employment.  I found, however, that the damages sought by SCI – a return of the payments it
made to Mr. Cook under the contract – were not appropriate, as they were recessionary, rather
than compensatory, in nature.  Accordingly, I recommended that the Court decline to award SCI
the damages it sought, without prejudice to its ability to request some other, proper measure of
damages.

SCI now seeks reimbursement of the attorney's fees it spent defending against the
employment-related suit brought by Mr. Cook, which it contends were the natural and proximate
consequence of his breach.  For breach of contract claims, Maryland courts generally award
damages "which will place the injured party in the monetary position he would have occupied if
the contract had been properly performed."  Hall v. Lovell Regency Homes Ltd. P'ship, 708
A.2d 344 (Md. App. 1998).  Maryland courts follow the rule of Hadley v. Baxendale, 156
Eng.Rep. 145 (1854), and hold that upon a breach, the non-breaching party is entitled to
compensatory damages which are the natural and proximate consequence of the breach, or which
are reasonably within the parties' contemplation at the time of contracting.  Munday v. Waste
Mgmt. of N. Am., Inc., 997 F. Supp. 681 (D. Md. 1998).

At first blush, requiring Mr. Cook to reimburse SCI for the attorney's fees it spent
defending against his employment-related lawsuit appears to fall squarely within the realm of

damages which would place SCI in the monetary position it would have occupied had Mr. Cook

kept his promise not to sue SCI for claims arising from his employment.  However, the Maryland

Court of Special Appeals' recent opinion in <u>Kaye v. Wilson-Gaskins</u>, 135 A.3d 892 (Md. Ct.

Spec. App. 2016) requires that I engage in an additional inquiry before reaching that conclusion.[2]

The Maryland Court of Special Appeals in <u>Kaye</u>, in interpreting the breach of a

settlement agreement containing a release of claims, discussed at length the legal distinctions

between covenants not to sue versus releases/discharges 135 A.3d at 902–07.  In <u>Kaye</u>, after

providing a release of claims, the plaintiff brought suit against the settling defendant for such

claims.  <u>Id.</u> at 900-01.  The defendant argued that the release operated as an "implied" covenant

not to sue, entitling defendant to collect contract damages for its breach.   <u>Id.</u>   In rejecting

defendant's argument, the Court of Special Appeals first pointed out that, historically, the release

of one tortfeasor operated as a release of all joint tortfeasors.   <u>Id.</u> at 904.  To overcome this

common law rule, a plaintiff seeking to settle with one but not all joint tortfeasors would not

execute a "release," but instead would execute an agreement not to sue the settling tortfeasor,

preserving claims against non-settling defendants.[3]  <u>Id.</u>  Similarly, the Court of Special Appeals

observed that where a release purported to release future claims that had not yet accrued, this too

needed to be considered as an implied covenant not to sue because one could not technically

release a claim to which one had not yet acquired a right.  <u>Id.</u> at 905.  The <u>Kaye</u> court stated that

---

[2] Although the decision of a lower state court is not controlling, the Supreme Court has stated that the decision of an intermediate appellate court "is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."  <u>C.I.R. v. Bosch's Estate</u>, 387 U.S. 456 (1957) (citing <u>King v. Order of United Commercial Travelers</u>, 333 U.S. 153, 160-61 (1948); <u>West v. Am. Tel. & Tel. Co.</u>, 311 U.S. 223, 237 (1940)).

[3] This issue was mooted when Maryland adopted the Uniform Contribution Among Joint Tortfeasors Act, Md. Code Ann., Cts. Jud. Proc. §3-1401, et. seq., which expressly stated that the release of one joint tortfeasor no longer operated as a release of all.

in both instances, notwithstanding the language chosen (or implied), the covenant not to sue should have the same practical effect as a release—*i.e.*, to operate as an immediate and automatic discharge of claims, not as a promise of future performance. Id. at 906-07.  In such situations, the Court of Special Appeals held that breach of contract damages—including consequential damages—were not recoverable because performance was complete at the time the release/covenant was effectuated. Id. at 906.

At the same time, the Kaye court noted that there could be situations where the settling party bargained for both a release and a covenant not to sue, with the breach of the latter entitling the non-breaching party to contract damages including consequential damages.  Id. at 906-07. The Court of Special Appeals also made clear that "the parties need not employ magic language in a contract in order to include a release, a covenant not to sue, or both." Id. at 907.  Rather, a court, in construing the parties' agreement, should aim to discern "what a reasonable person in the position of the parties would have meant at the time it was effectuated" to determine whether the parties sought a release, a covenant not to sue, or both. Id. (citing Spacesaver Sys., Inc. v. Adam, 98 A.3d 264 (Md. 2014)).

There are a number of factors in the present case that distinguish it from Kaye and cause me to conclude that the parties indeed intended both. First, unlike Kaye, we are not dealing simply with a settlement agreement where the intent merely to release can often be conclusively determined based on the settlement dynamic alone. To the contrary, the Agreement was a one-year consultancy agreement such that the context is more expansive than simply settlement of a dispute and accompanying release of claims.  Second, unlike Kaye, SCI  here is relying on an express rather than implied covenant not to sue. Third, unlike Kaye, the Agreement contained both a covenant not to sue and a release.  Maryland courts routinely hold that contracts should

not be construed in a manner that would render a clause superfluous.  Towson Univ. v. Conte, 862 A.2d 941, 948 (Md. 2004) (citing Walker v. Dept. of Human Res., 842 A.2d 53, 61 (Md. 2004).  Were the language of this clause construed as nothing more than a release, that construction would not only be contrary to the plain meaning of the promise not to sue, but it would also give no effect to the fact that the parties chose to include both an express ongoing promise not to litigate and a release of claims.

I thus recommend that the Court decline to interpret the contract in a manner that is contrary to its plain meaning and which would render superfluous the express ongoing promise not to litigate.  I instead recommend that the Court construe the contract both as a release and a covenant not to sue, under which SCI is entitled to recover the damages it suffered as a result of Mr. Cook's breach.

## III.    CONCLUSION

For the reasons set forth herein, reimbursement of SCI's attorney's fees stands to place SCI in the position it would have occupied had Mr. Cook not breached his covenant not to sue, I recommend that the Court GRANT SCI's motion for attorney's fees (ECF No. 37) and award SCI $10,000.00 in attorney's fees that is supported by SCI's affidavits.  I also direct the Clerk to mail a copy of this Report and Recommendation to Mr. Cook at the address listed on Plaintiff's Complaint.  (ECF No. 1).  Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5.b.

August 31, 2016                                  _____/s/_____
                                                 J. Mark Coulson
                                                 United States Magistrate Judge